UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NABI MOHAMMED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:25-cv-02404-TWP-MKK |
| ) | |
| SAMUEL OLSON, ) | |
| KERRY J. FORESTAL, ) | |
| KRISTI NOEM, ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, ) | |
| PAMELA BONDI, ) | |
| EXECUTIVE OFFICE FOR IMMIGRATION ) | |
| REVIEW, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS
AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on Petitioner Nabi Mohammed's ("Petitioner") Petition for Writ of Habeas Corpus. (Dkt. 1). Petitioner is detained at the Marion County Jail in Indianapolis, Indiana, under the authority of U.S. Immigration and Customs Enforcement ("ICE"). He filed this writ of habeas corpus petition under 28 U.S.C. § 2241 seeking immediate release or, in the alternative, a bond hearing pursuant to 8 U.S.C. § 1226(a) within five days. *Id*. Petitioner argues that ICE is unlawfully detaining him under a statute making him ineligible for bond. Respondents argue that Petitioner's detention is lawful and that the only available remedy, if any, is a bond hearing. The Court finds that Petitioner is statutorily eligible for a bond and that his continued detention without an opportunity for a bond hearing violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Therefore, the Court grants the petition to the extent that, within **seven days** of this order, **Respondents are ordered** to either: (1) afford Petitioner an

1

individualized bond hearing before an Immigration Judge ("IJ") pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision.

## I. FACTS

Petitioner is a citizen of India who entered the United States without inspection on or about November 6, 2024. (Dkt. 9-1 at 2) (I-213 Record of Deportable/Inadmissible Alien). The U.S. Border Patrol encountered Petitioner near the U.S.-Mexico border in California and detained him for further processing. *Id.* He was processed for expedited removal per 8 U.S.C. § 1225(b)(1). *Id.* On December 30, 2024, the Department of Homeland Security ("DHS") issued a Notice to Appear and placed Petitioner in removal proceedings under 8 U.S.C. § 1229(a). (Dkt. 9-2).

The Notice to Appear charges Petitioner with inadmissibility under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1182(a)(6)(A)(i)] as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." *Id.* The "arriving alien" checkbox is unmarked. *Id.* Furthermore, the Notice to Appear advises Petitioner that "[t]his notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture." *Id.* Thus, it vacates the expedited removal order. *Id.* ("Section 235(b)(1) order was vacated pursuant to 8 C.F.R. 208.30") (cleaned up). *Id.* Then, after three months of detention in Colorado, Petitioner was released on parole. Dkt. 1 ¶ 43. Since then, he has lived and worked in Indiana. *Id.*

On October 2, 2025, Petitioner reported to the ICE office in Indianapolis for an unscheduled appointment. ICE arrested Petitioner pursuant to a "Form I-200 Warrant of Arrest of Alien," and transferred him to Marion County Jail where he remains. (Dkt. 9-1 at 2). The arrest

2

warrant commands "any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to arrest Petitioner. Dkt. 9-3.

## II.   EXHAUSTION

Petitioner has yet to appear before an Immigration Judge ("IJ"). Respondents argue that, as a result, the instant petition is premature because Petitioner has not exhausted all available administrative remedies. (Dkt. 9 at 3).

Petitioner argues that any attempt to exhaust his administrative remedies would be futile because an IJ would deny his request for a bond hearing under the recent Bureau of Immigration Appeals ("BIA") decisions *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), and *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). *See* Dkt. 1 ¶ 48; Dkt. 11 at 3. Both *Yajure Hurtado* and *Q. Li* hold that IJs do not have the authority to hold a bond hearing where the moving noncitizen entered the country without inspection.[1] Because Petitioner entered the country without inspection, if he were to move for a bond hearing, an IJ would have to decline jurisdiction over the issue.

Respondents do not cite a statute requiring Petitioner to move for a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Petitioner to exhaust his administrative remedies here would be futile. As another trial court in the Seventh Circuit has noted, "[Respondents'] argument is Kafkaesque. Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. This Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change

---

[1] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

3

its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) (internal quotes and citations omitted). As the government has done in other cases, Respondents here repeat the argument that Petitioner must exhaust his administrative remedies, but they do not deny that IJs and the BIA are bound to find Petitioner ineligible for bond pursuant to *Yajure Hurtado* and *Q. Li*. Accordingly, the Court finds that exhaustion of Petitioner's administrative remedies, such as they are, would be futile and, therefore, not required.

### III.    ELIGIBILITY FOR BOND

The merits of the petition revolve around Respondents' statutory authority to detain Petitioner while his removal proceedings remain pending. Petitioner argues that the statutory text, context, and prior history make it so that Respondents can only lawfully detain him pursuant to 8 U.S.C. § 1226(a). (Dkt. 11 at 5–9). Respondents argue that Petitioner is subject to the broader "catchall provision" in § 1225(b)(2) because he meets the criteria. (Dkt. 9 at 5).

8 U.S.C. § 1226 and § 1225 govern the detention and removal of noncitizens. In general, § 1226 applies to aliens already present in the United States, while § 1225 applies to "certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

4

8 U.S.C. § 1226(a). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are

not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### A. Petitioner's Current Detention Is Governed by § 1226

In this case, the Respondents' actions and their representations to Petitioner demonstrate that his re-detention on October 2, 2025 is governed by § 1226. As seen above, Petitioner was initially detained pursuant to § 1225(b)(1) and processed for expedited removal until the government determined that he had a credible fear of persecution and could apply for asylum. *See* Dkt. 9-1; Dkt. 9-2. Then, the government issued a Notice to Appear that vacated the "Section 235(b)(1) order . . . pursuant to 8 C.F.R. 208.30." Dkt. 9-2. The government then released Petitioner. Months later, DHS issued an arrest warrant that explicitly invokes § 1226. Dkt. 9-2. Indeed, the text of § 1226 authorizes the arrest and detention of aliens with a warrant. Section 1225 does not contain any language about warrants since detention is mandatory. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). In sum, DHS's documents make it clear that Petitioner's current detention is only authorized under § 1226(a). "[T]he Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

Aside from the record evidence, Respondents' statutory argument fails because it only makes sense when § 1225(b)(2) is read in complete isolation from the rest of § 1225 and from the broader statutory scheme of the INA. Respondents argue that § 1225(b)(2) pertains to Petitioner

6

because he is an "applicant for admission," who is "seeking admission," and who is "not clearly and beyond a doubt entitled to be admitted." Dkt. 9 at 6. Each term might pertain to Petitioner in isolation—he fits the parameters of "applicant for admission" in § 1225(a)(1) because he is an unadmitted alien; he is not clearly and beyond doubt entitled to be admitted; and he could possibly be said to be "seeking admission" because he has an active asylum application. But such a reading contradicts the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole demonstrates that the most natural meaning of § 1225 is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. Thus even though it appears § 1225 applied to Petitioner when border patrol encountered him near

7

the U.S.-Mexico border in November of 2024, once the government determined that he was not "arriving" and vacated the § 1225(b)(1) order, *see* Dkt. 9-2 (Notice to Appear), the section no longer applies to him.

Respondents also argue that Petitioner is an "applicant for admission" according to *Thuraissigiam*, 591 U.S. at 118–19, which held that a noncitizen apprehended 25 yards from the border and seeking admission was not entitled to habeas relief. *Id.*; see (Dkt. 9 at 9). But *Thuraissigiam* is legally and factually distinct from the petition. The *Thuraissigiam* Court makes the distinction clear:

> While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause. Respondent attempted to enter the country illegally and was apprehended just 25 yards from the border. He therefore has no entitlement to procedural rights other than those afforded by statute.

*Id*. (internal citations omitted). In contrast to the *Thuraissigiam* petitioner, Petitioner was re-detained hundreds of miles away from the territorial border in Indiana after living in the United States for almost a year.

Respondents' interpretation of § 1225(b)(2) would also make the recently enacted amendment to § 1226(c) superfluous. Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens *not*

8

*admitted into the United States* who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)) (emphasis added). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Adopting Respondents' reading would render the exceptions in § 1226(c) completely unnecessary and illogical. "When Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that absent those exceptions, the statute generally applies. *Rodriguez v. Bostock*, 779 F. Supp. 3d, 1256–57 (W.D. Wash. 2025) (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Thus, a plain reading of the exception in § 1226(c) implies that § 1226 applies to noncitizens such as Petitioner, who have not been admitted or paroled.

Last, Respondents' argument that only § 1225(b)(1)—and not the entirety of § 1225—applies to "arriving aliens" fails when considering the statute's prior usage and interpretation. In July of 2025, DHS and the Department of Justice announced a new policy providing that everyone who entered the country without inspection would be treated as an "applicant for admission" and detained pursuant to § 1225(b)(2).[2] This new interpretation contradicted decades of prior usage. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."). The detention provisions in both § 1226 and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), after which the Executive Office of Immigration Review ("EOIR") drafted rules explaining that "inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an

---

[2] Available at https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf (last accessed Dec. 9, 2025).

9

immigration judge while arriving aliens do not. This procedure maintains the status quo regarding release decisions for aliens in proceedings." *See* Inspection and Expedited Case Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In other words, the EOIR issued rules clarifying that the new detention provisions *did not* undo the status quo of treating non-arriving aliens under a discretionary detention scheme.[3] Furthermore, currently, 8 C.F.R. § 235.3(c)(1) notes that "[e]xcept as otherwise provided in this chapter, *any arriving alien* who appears to the inspecting officer to be inadmissible, *and who is placed in removal proceedings pursuant to section [1229a]* shall be detained in accordance with section [1225(b)]." (emphasis added). This regulation shows that the government conceives of § 1225 as applying to arriving aliens. While interpreting the meaning of a statute belongs to the "independent judgment" of the courts, "'the longstanding practice of the government'—like any other interpretive aid—'can inform [a court's] determination of what the law is.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385-86 (2024) (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)). The Court finds that the government's longstanding practice, under which § 1225(b)(2)(A) would not have applied to Petitioner's circumstances, is consistent with the text and statutory scheme.

Taken together, the plain text of the statute, the statutory context, and DHS's prior usage and history demonstrate that Petitioner may only be lawfully detained pursuant to § 1226(a).

---

[3] As Petitioner notes, the EOIR's guidance tracks with Congress's explanation of the IIRIRA's amendments as restating the previous authority to detain aliens. *See* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) ("Section 236(a) restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States . . . The minimum bond for an alien released pending removal proceedings is raised from $500 to $1500.").

B. **Petitioner's Detention Is Unlawful**

Respondents argue that Petitioner is lawfully detained under § 1226 because he has an opportunity to receive a bond hearing before an IJ. (Dkt. 9 at 11). Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence that Petitioner has or had an opportunity to receive a bond hearing where the IJ would make an individualized determination of his custody pursuant to 8 C.F.R. § 236.1(d)(1). Furthermore, Respondents do not cite any binding precedent applying § 1226(e) to a habeas petition seeking a bond hearing pursuant to § 1226(a). In fact, Respondents' case, *Demore v. Kim*, 583 U.S. 510 (2003), held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. Similarly, Petitioner is not challenging a discretionary judgment—he is challenging his ongoing detention without being given the opportunity to seek a discretionary judgment regarding his custody.

In sum, Petitioner's detention without opportunity to request a bond hearing from an IJ who will individually determine his eligibility for bond pursuant to § 1226(a) violates the INA. Petitioner is thus entitled to habeas relief because his continued detention violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.   FIFTH AMENDMENT DUE PROCESS

Petitioner next argues that his ongoing detention without a bond hearing violates his due process rights because the government has not made a determination about his dangerousness or flight risk. (Dkt. 11 at 9–11). Respondents argue that Petitioner's detention is "reasonable" because he has only been detained since October. (Dkt. 9 at 12–13). In this way, under *Zadvydas*, 533 U.S. at 701 and *Demore*, 538 U.S. at 528, Petitioner's detention is presumably not indefinite. *Id*.

Because Petitioner is entitled to habeas corpus relief on the grounds discussed above, however, the Court reserves judgment on Petitioner's Constitutional claims.

## V.   SCOPE OF RELIEF

Petitioner requests immediate release from custody or, in the alternative, an individualized bond hearing within 5 days. (Dkt. 1 at 12). Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, ordering an individualized bond hearing is appropriate here because detention under § 1226(a) is discretionary and the due process violation arises from Petitioner's detention without a bond hearing.

## VI.   CONCLUSION

For the above reasons, the Petition for Writ of Habeas Corpus, Dkt. [1] is **GRANTED**. Respondents' detention of Petitioner without an individualized bond hearing violates the ". . . laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

Within **seven days** of this order, Respondents must either: (1) provide Petitioner with an individualized bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a); or (2) release Petitioner from custody, under reasonable conditions of supervision. Respondents must document that they

12

have provided Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) or that they have released him. Respondents **must file notice with the court within four days** of either action.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date: 12/10/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Louise Carhart
Kempster, Corcoran, Quiceno & Lenz-Calvo, Ltd.
louisec@klc-ltd.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov